## Case No. 17,265.

### WATERS v. CAMPBELL.

[5 Sawy. 17; 10 Chi. Leg. News, 68; 4 Law & Eq. Rep. 616.] [1]

Circuit Court, D. Oregon. Sept. 3, 1877.

ARREST BY MILITARY FORCE — TRIAL BY CIVIL AUTHORITIES—INDIAN INTERCOURSE ACT.

1. A person arrested by military force for the violation of section twenty or twenty-one of the Indian intercourse act of June 30, 1834 (4 Stat. 732), is not a military prisoner subject to the articles of war, but a citizen charged with a non-military crime, and must be removed for trial by the civil authorities within five days from his arrest or discharge; and his detention thereafter under any circumstances is unlawful.

2. A person under arrest as above stated may be confined in the military prison, but he cannot be lawfully required to labor or perform any duty other than taking care of his person.

Motion for new trial, for error in the charge of the court and excessive damages in the verdict.

This action was brought to recover damages for the alleged false imprisonment of the plaintiff [Hugh Waters] by the defendant [James B. Campbell] in Alaska, for the period of one hundred and thirteen days following September 18, 1874. It was commenced on

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 4 Law & Eq. Rep. 616, contains only a partial report.]

June 27, 1876, in the circuit court of the state for the county of Clatsop; and on August 8, thereafter, was removed by the defendant to this court. [For opinion overruling demurrer, see Case No. 17,264.]

On the trial it appeared that the defendant at the time of the alleged false imprisonment was an officer in the army of the United States, and in command of the military post at Sitka in Alaska; that on August 31, 1874, Gen. J. C. Davis, then commanding the department of the Columbia, ordered the defendant to send a detachment of soldiers under a commissioned officer to Wrangel, in Alaska, "to co-operate with the deputy collector of internal revenue in breaking up the illicit traffic in liquors" at that place, with directions that all persons arrested should be taken to Sitka and "dealt with according to law;" the officer executing this order was referred for his guidance in the premises to the act of March 15, 1864 (13 Stat. 29), amending section 20 of the Indian intercourse act of June 30, 1834 (4 Stat. 732), and also section 21 of the latter, as well as the act of March 3, 1873 (17 Stat. 530), extending said sections 20 and 21 over the territory of Alaska; that on September 14, 1874, the defendant ordered Lieut. Dyer to proceed to Wrangel on the steamer bound for Portland, Oregon, and execute the order of Gen. Davis; that on September 18, said Dyer arrested the plaintiff and others at Wrangel as persons found engaged there in introducing spirituous liquors into the country contrary to said section 20, and sent them under guard, on October 22, to Sitka, upon the steamer going from Portland to that place, where they arrived on October 24, and remained in custody until December 24; that the defendant refused to send the plaintiff to Portland for trial on the return trip of the steamer that conveyed him to Sitka, but sent him there as soon thereafter as he could, where he arrived on January 5, 1875, and was discharged by the United States commissioner on January 9 following; that the only mode of communication during this period between Sitka and Wrangel and Portland, Oregon, was by means of the mail steamer which made monthly trips between Portland and Sitka; that while the plaintiff was detained at Sitka, he was confined in the guard-house with military culprits and compelled to perform the labor usually imposed upon such persons.

Section 20 aforesaid prohibits the introduction of spirituous liquors into Alaska, without the order of the war department, under the penalty of fine and imprisonment. By sections 2150, 2151 of the Revised Statutes, compiled from sections 21 and 23 of the aforesaid intercourse act, the military force of the United States may be employed, under such regulations as the president may direct, to arrest persons in the Indian country, and convey them to the civil authority for trial; but "no person apprehended by military force" in such case "shall be detained longer than five days after arrest and before removal;"

and "all officers and soldiers who may have any such person in custody shall treat him with all the humanity which the circumstances will permit." The act of March 3, 1873, aforesaid, is a part of the civil appropriation act of that date, by which the Alaska act of July 27, 1868, was amended, so as to extend over the territory of that name sections 20 and 21 aforesaid, and thereby make it "Indian country." The cause was tried in June, 1877, before the district judge, with a jury, and a verdict found for the plaintiff for three thousand five hundred dollars.

Among others, the following instructions were given to the jury: "The defendant is not responsible for the arrest and imprisonment of the plaintiff at Wrangel, unless he personally directed it to be done. In detailing Lieutenant Dyer to proceed to Wrangel and execute the order from General J. C. Davis, the commander of the department, the defendant did not direct or make himself responsible for the arrest or imprisonment of any one. In so doing he but performed his duty. If in the execution of this order Dyer arrested the plaintiff at Wrangel, and imprisoned him there, the defendant is not responsible for it. But if, as has been testified by the witness John A. Carr, the defendant went further and personally directed Dyer to arrest and imprison the plaintiff, then he is responsible for it. * * * The defendant is responsible for the imprisonment and treatment of the plaintiff while at Sitka, the port under his immediate command. This he admits and justifies. The defendant was authorized to arrest the plaintiff if he had probable cause to believe that he was guilty of introducing spirituous liquors into Alaska contrary to section 20 of the Indian intercourse act of May, 1834—that is, without the sanction of the war department. The official report of Major Rodney, made in August, after an inspection of the plaintiff's premises at Wrangel, and the affidavits of John Vierria and J. M. Edgar, taken by Dyer at that place, contains probable cause for the arrest. The facts stated in these writings show that the plaintiff was engaged in the violation of this law. But the defendant was bound to commence the removal of the plaintiff for trial by the civil authorities within five days from the time he took him into custody, and therefore the imprisonment of the plaintiff at Sitka became false and unlawful after that period. It is maintained by counsel that under article 69 of the articles of war, which reads: 'Any officer who presumes, without proper authority, to release any person committed to his charge, or suffers any person so committed to escape, shall be punished as a court-martial may direct,' the defendant was directed to keep the plaintiff in custody at Sitka, until directed by the commander of the department to dispose of him otherwise. But in my judgment this article of war is not ap-

plicable to the plaintiff. For although arrested by military force he was not a military prisoner—not a part of the army of the United States, and therefore not subject to the articles of war. In taking the plaintiff into custody, the defendant was acting as a civil officer in enforcing an act of congress against a citizen. This act provided what disposition should be made of the prisoner. He was not arrested for a military crime nor to be tried by the military authority. The military force was used to accomplish his arrest, because there were no civil officers in the territory, but the act authorizing his arrest also required that he should be removed for trial by the civil authority within five days therefrom. The order of General Davis under which this arrest was made was evidently prepared with this act in view, for it not only refers to it, but provides that 'All persons arrested will be taken to Sitka, and dealt with according to law.' If it was impossible for the defendant to commence the removal of plaintiff for trial by the civil authority within five days from the time he received him into his custody, there was no alternative but to discharge him. His power over the plaintiff under this arrest was gone and thereafter the imprisonment became illegal. This question was considered in the district court in the case In re Carr [Case No. 2,432]. In that case Carr was brought from Sitka on a habeas corpus and discharged upon the ground that he had been detained by this defendant more than five days after his arrest there. In deciding the question the court said: 'The petitioner having been detained over five days, indeed nearly ninety, before any attempt was made to remove him for trial by the civil authorities, his detention thereafter became unlawful and unauthorized. The statute is peremptory upon the subject, and with good reason—"Provided, that no person, apprehended by military force as aforesaid, shall be detained longer than five days after the arrest and before the removal." If the removal cannot be commenced in that time the prisoner must be discharged. It was supposed by congress, as this proviso manifests, that these arrests would often be made at remote and out of the way places, where the prisoner would be comparatively helpless, without access to counsel or friends, and if the officer whose custody he was in was to be the judge of when he would, or conveniently could, remove him to the civil authorities for trial, it might sometimes happen that the detention would be continued captiously or maliciously, and the imprisonment become grossly oppressive.' In Barclay v. Goodale [Id. 972] (August 17, 1872), sitting in this court. I held, after able argument and full consideration of the premises, that the defendant, who had arrested the plaintiff upon a similar charge and detained him more than five days before removal, because he had no sufficient means wherewith to do otherwise, was liable for false imprisonment. But the plaintiff was not falsely imprisoned from December 24, 1874, until January 9, 1875, while he was being removed to this place for trial under the order of the defendant. The defendant having probable cause to take the plaintiff into custody on October 24, when he arrived at Sitka from Wrangel, had the same cause to rearrest him on December 24. I think, therefore, the order under which the plaintiff was finally conveyed here should, in justice to the defendant, be regarded in the light of a new arrest, and the imprisonment under it lawful. In making up your verdict. then, you start with the undisputed fact that the defendant falsely, wrongfully, imprisoned the plaintiff from October 29 to December 24, 1874, a period of fifty-six days. * * * The plaintiff being entitled to recover, the amount of your verdict must depend upon the injury which he has sustained, and the motives which influenced the defendant. In estimating the direct injury to the plaintiff you will take into consideration his station in life, calling. the value of his time, and the like. You will also consider whether the defendant acted from good motives, under a mistake as to the law, or whether he acted wantonly or from malice. In the former case you should confine the damages to the actual loss or injury which the plaintiff appears to have suffered, while in the latter you may and should go farther and fix the damages accordingly. The plaintiff being a non-military person, a citizen merely under arrest upon the charge of having committed a non-military crime, ought not to have been compelled to work during his confinement or to perform any duty unless it was to take care of his person. The plaintiff has given evidence, including his own testimony, tending to show that he was harshly and inhumanly treated; that he was compelled to work at times and under circumstances that would .be improper even in the case of a soldier committed to the guard-house as a punishment for an offense. It is admitted by the defense that the plaintiff was required to do fatigue duty about the post in common with the soldiers confined in the guard-house with him, but not otherwise. The evidence offered by the defendant tends to prove that the plaintiff was treated humanely and kindly, and was not required to work or perform any duty other than might properly be required of a soldier under like circumstances. It is for you to judge between these conflicting statements. But in any event, it was wrong to require the plaintiff to work at all while in custody awaiting trial; and that fact should be considered by you in estimating the damages."

W. W. Page, H. T. Bingham, and G. W. Yocum, for plaintiff.

W. Upton and Rufus Mallory, for defendant.

Before FIELD, Circuit Justice, and DEADY, District Judge.

FIELD, Circuit Justice. We think there was no error in the charge of the court, and that the law of the case was delivered to the jury correctly. But we think the damages found by the jury excessive, and there must be a new trial on that ground, unless the plaintiff consents to remit one thousand five hundred dollars of the verdict.

The plaintiff, consenting accordingly, had judgment for two thousand dollars.